UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOLEEN D. WILSON,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>Defendant. | No. 2:13-cv-2229 DAD<br><br><br><br>ORDER |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, defendant's cross-motion is denied, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

PROCEDURAL BACKGROUND

On October 15, 2010, plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act") alleging disability beginning on January 1, 1995. (Transcript ("Tr.") at 11, 147-58.) Plaintiff's application was denied initially, (id. at 64-68), and upon reconsideration. (Id. at 75-80.) Thereafter, plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on

1

May 30, 2012.  (Id. at 27.)  Plaintiff was represented by an attorney and testified at the administrative hearing.  (Id. at 27-28.)  In a decision issued on June 22, 2012, the ALJ found that plaintiff was not disabled.  (Id. at 22.)

The ALJ entered the following findings:

> 1.  The claimant has not engaged in substantial gainful activity since October 15, 2010, the application date (20 CFR 416.971 *et seq*.).
>
> 2.  The claimant has the following severe impairments: diabetes mellitus, status post laparotomy with left ovarian cystectomy; history of bilateral nephrolithyiasis; straightening of the cervical lordosis secondary to muscle spasm; morbid obesity; bipolar type II disorder, panic disorder without agoraphobia; posttraumatic stress disorder; and alcohol abuse in remission (20 CFR 416.920(c)).
>
> 3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: she could stand and/or walk for 4 hours in an 8-hour workday; she could sit without limitation in an 8-hour workday; she could lift 20 pounds occasionally and 10 pounds frequently; she could frequently climb; she could perform one- to two-step tasks; she could maintain concentration and attention for one- to two-step tasks; she could interact with supervisors and coworkers, but she could interact with the public on an occasional basis; and she is able to adapt to the usual work settings.
>
> 5.  The claimant has no past relevant work (20 CFR 416.965).
>
> 6.  The claimant was born on September 17, 1984 and was 26 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
> 7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> 8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).
>
> 9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform  (20 CFR 416.969 and 416.969(a)).

/////

2

> 10. The claimant has not been under a disability, as defined in the Social Security Act, since October 15, 2010, the date the application was filed (20 CFR 416.920(g)).

(Id. at 13-21.)

On August 21, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's June 22, 2012 decision. (Id. at 1-3.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on October 24, 2013.

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

3

>Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled. If not, proceed to step five.
>Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In her motion pending before the court plaintiff argues that the ALJ committed the following two principal errors:  (1) the ALJ erred at step two of the sequential evaluation; and (2) the ALJ's treatment of the medical opinion evidence of record constituted error.

**I.     Step Two Error**

Plaintiff argues that the ALJ improperly evaluated her impairments at step two of the sequential evaluation process and erred by failing to find that plaintiff's urinary incontinence was a severe impairment.  (Pl.'s MSJ (Dkt. No. 21) at 19-22.[1])

At step two of the sequential evaluation, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments.  Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41).  The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521(a) & 416.921(a).  Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include:  (1) physical functions such as walking, standing, sitting, lifting, and carrying; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

1   with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b) & 416.921(b).

2         The Supreme Court has recognized that the Commissioner's "severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S. at 153.  However, the regulation must not be used to prematurely disqualify a claimant.  Id. at 158 (O'Connor, J., concurring).  "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work."  Smolen, 80 F.3d at 1290 (internal quotation marks and citation omitted).  "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'"  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28).  See also Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005) (claimant failed to satisfy step two burden where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results").  "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'"  Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at 1290).  See also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) (discussing this "de minimis standard"); Tomasek v. Astrue, No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal. Feb.11, 2008) (describing claimant's burden at step two as "low").

20        Here, the ALJ found that plaintiff's urinary incontinence was "not severe."  (Tr. at 14.)  In this regard, the ALJ noted that on March 18, 2011, plaintiff "began treatment with an urologist for complaints of stress urinary incontinence" and was "eventually advised that she may benefit from a transobturator ("TOT") placement procedure."  (Id.)  The ALJ went on to conclude that there was "little objective documentation" that plaintiff's incontinence lasted for a continuous 12-month period because on September 20, 2011, plaintiff told her treating urologist "that her incontinence improved since undergoing [a] cystectomy," and that "by February 21, 2012, the claimant reported no urinary symptoms."  (Id.)

/////

5

The ALJ's analysis of plaintiff's urinary incontinence impairment, however, is deficient in three respects. First, plaintiff's treatment for urinary incontinence dates back to at least April 22, 2008, when surgeon Matthew Bazzani performed a "[t]ension-free vaginal tape-obturator procedure" in order to address plaintiff's "[s]tress urinary incontinence and urethral hypermobility." (Id. at 395.) Plaintiff continued to be treated for urinary incontinence thereafter.

On June 24, 2009, plaintiff was given a prescription to treat "urinary frequency." (Id. at 252.) On March 12, 2010, Dr. Bazzani released plaintiff from work for one year, noting "incontinence." (Id. at 250.) On March 16, 2011, Dr. Bazzani extended plaintiff's release from work for another year noting that, while there were "many factors," for Dr. Bazzani it was "pelvic pain, urinary incontinence" that necessitated the extension. (Id. at 397.) On March 18, 2011, plaintiff was evaluated by urologist Dr. Lionel S. Foster for "urinary incontinence." (Id. at 480.) At that time Dr. Foster recommended a cystoscopy to determine if plaintiff had a "hypermobile urethra that may benefit from a TOT procedure." (Id.) On March 24, 2011, Dr. Dann, a non-treating, non-examining physician, reviewed plaintiff's medical records and opined that due to this condition plaintiff "must be within 200 feet of a restroom." (Id. at 295.) On May 2, 2011, Dr. Foster performed a cystoscopy on plaintiff and confirmed that plaintiff had "hypomobile urethral syndrome." (Id. at 376.) On January 9, 2012, Dr. Bazzani completed a Physical Residual Functional Capacity Evaluation form and stated that plaintiff suffered from "severe urinary incontinence." (Id. at 459.)

Second, although it is true that plaintiff apparently told her treating urologist, Dr. Foster, on September 20, 2011, that her incontinence had improved since she underwent a cystectomy, the fact that her symptoms improved does establish that her symptoms improved to a degree that they were not severe. Indeed, at the very same appointment at which plaintiff reported that her symptoms had improved, Dr. Foster noted that plaintiff "may consider TOT procedure later." (Id. at 472.)

Third, it is not clear that the ALJ's statement that plaintiff reported no urinary symptoms on February 21, 2012, is accurate. In this regard, the ALJ cites to a February 21, 2012 treatment note from plaintiff's visit with her OB/GYN for a "Depo Injection." (Id. at 505.) Under "Urinary

6

1  Symptoms" that doctor's treatment note states "none." (Id.)  From this scant bit of evidence it is
2  unclear whether or not plaintiff affirmatively reported no symptoms related to urinary
3  incontinence on February 21, 2012, or if simply no symptoms were noted at that time by
4  plaintiff's OB/GYN.  In her testimony at the administrative hearing plaintiff disputed that she
5  ever stated that she was not having symptoms of urinary incontinence and ran down the length
6  and severity of her symptoms with respect to that condition.  (Id. at 50-53.)

As noted above, the ALJ's conclusion that the claimant lacks a medically severe impairment or combination of impairments is valid only when that conclusion is "clearly established by medical evidence." Webb, 433 F.3d at 687.  Here, it simply cannot be said that the ALJ's conclusion that plaintiff's urinary incontinence was not a medically severe impairment was clearly established by medical evidence.  See Ortiz v. Commissioner of Social Sec., 425 Fed. Appx. 653, 655 (9th Cir. 2011) ("This is not the total absence of objective evidence of severe medical impairment that would permit us to affirm a finding of no disability at step two.")[2]; Webb, 433 F.3d at 687 ("Although the medical record paints an incomplete picture of Webb's overall health during the relevant period, it includes evidence of problems sufficient to pass the de minimis threshold of step two."); Russell v. Colvin, 9 F.Supp.3d 1168, 1186-87 (D. Or. 2014) ("On review, the court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Ms. Russell did not have a medically severe impairment or combination of impairments."); cf. Ukolov, 420 F.3d at 1006 ("Because none of the medical opinions included a finding of impairment, a diagnosis, or objective test results, Ukolov failed to meet his burden of establishing disability.").

Accordingly, the court finds that plaintiff is entitled to summary judgment in her favor with respect to her claim that the ALJ erred by failing to find at step two of the sequential evaluation that plaintiff's urinary incontinence constituted a severe impairment.

/////

---

[2] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits.[3] McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). However, where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. Id. at 594.

Here, the ALJ erred at step two of the sequential evaluation by finding, without adequate support, that plaintiff's urinary incontinence was not a severe impairment. On remand, an ALJ shall recognize plaintiff's urinary incontinence as a severe impairment at step two and proceed with the remainder of the sequential evaluation process.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 21) is granted;

2. Defendant's cross-motion for summary judgment (Dkt. No. 22) is denied;

3. The Commissioner's decision is reversed; and

4. This matter is remanded for further proceedings consistent with this order.

Dated: March 23, 2015

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.soc sec\wilson2229.ord.docx

---

[3] In light of the remand required by the ALJ's error at step two, and because the record is not fully developed, the court need not address plaintiff's remaining claim that the ALJ's treatment of the medical opinion evidence of record constituted error. See Canchola v. Colvin, No. EDCV 12-1549-DTB, 2013 WL 5548444, at *7 (C.D. Cal. Oct. 7, 2013) ("Although remand is appropriate to continue the sequential evaluation starting at step three, there is no reason for the Court to direct the manner in which the Commissioner analyzes these remaining steps."); Sanchez v. Apfel, 85 F.Supp.2d 986, 993 n. 10 (C.D. Cal. 2000) ("Having concluded that a remand is appropriate because the ALJ erred in ending the sequential evaluation at Step Two, this Court need not consider the issue of plaintiff's credibility.").